L. D. WEISE *v.* S. A. RUTLAND.

LIEN OF EMPLOYE. *Overseer of farm. Code* 1880, § 1360.

Section 1360, code 1880, giving to every employe, laborer, cropper, part owner or other person who may aid by his labor to make, gather or prepare for sale any crop, a lien for his wages or interest, embraces an overseer of the farm in making a crop. *Hester* v. *Allen*, 52 Miss., 162, distinguished.

FROM the circuit court of Washington county.

HON. R. W. WILLIAMSON, Judge.

Proceeding by appellee, begun December 13, 1890, to enforce a lien on certain cotton grown that year. Judgment for plaintiff. Defendant appeals. The opinion contains a further statement of the case.

*Jayne & Watson*, for appellant.

Appellee was not entitled to a lien. *Hester* v. *Allen*, 52 Miss., 162. It is true the language of § 1360, code 1880, is somewhat broader than that of the acts of 1872–1873, but we do not think it includes a manager or overseer. The persons given the lien are those whose labor *directly* assists

in making or gathering the crop or preparing it for market. By a well-known rule of construction, the words, "other persons," will be restricted to persons of like kind as those previously enumerated in the statute. A blacksmith, employed to make or repair tools for use in cultivating a crop, or a cook for laborers engaged in making the same, or an agent engaged in employing laborers therefor, would not be entitled to the lien, yet, all these would indirectly contribute to the production of the crop. A manager is in the same category. He is the mere *agent or representative of the owner* in making the crop.

The legislature did not understand that it was intended by the provisions of the code of 1880, brought forward in the code of 1892, to give a manager a lien, for, at the last session, a special act was passed to give such lien.

*J. H. Wynn,* for appellee.

In 1886 it was decided that, under the acts of 1872–1873, a manager had no lien on a crop. 52 Miss., 162. Afterwards, in view of this decision, the law was amended by adding the words, "or any other person who may aid by labor to make, gather," etc. Code 1880, § 1360. This is broad enough to include a manager. The evident purpose was to supply such omissions as existed in the former statutes.

It has never been decided that one, to be entitled to a lien, must be a menial laborer. In *Williams* v. *Link,* 64 Miss., 641, it was held that a clerk in a store was a laborer within the contemplation of § 1244, code 1880.

The duties of a manager require great physical toil, and there is every reason why one contributing so much in making a crop should be entitled to a lien.

In *Terry* v. *Groves, ante,* 539, the decision clearly recognizes the right of a manager to enforce a lien.

COOPER, J., delivered the opinion of the court.

The appellee, who was an overseer or manager of the

farm upon which the crop in controversy was grown, was entitled to the lien thereon asserted by him and allowed by the court below. By § 1360, code 1880, it was declared, *inter alia,* that "every employe, laborer, cropper, part owner or other person who may aid by his labor to make, gather or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his wages, or share or interest in such crop, whatever may be the kind of wages or the nature of such interest; and such liens shall be paramount to all liens or incumbrances, or rights of any kind, created by or against the person so contracting for such assistance, except the lien of the lessor of the land on which the crop is made, for rent and supplies furnished, as provided in the act in relation to landlord and tenant."

In *Hester* v. *Allen,* 52 Miss., 162, it was held that an overseer did not have a lien upon the crops grown under his supervision under the provisions of the acts of 1872 and 1873 providing for the lien of laborers upon agricultural products. But there is a wide difference between the provisions of the acts of 1872 and 1873 and those of the code above quoted. By the act of 1872 it was declared "that there shall be a first lien in law upon all the agricultural products raised in this state to secure payment of any wages due for labor done in the raising, handling, saving or transportation of such agricultural products, and the person or persons to whom such wages shall be due shall have the security of such lien," etc. Laws 1872, p. 131. By the act of 1873 the provisions of the act of 1872 were extended "to all cases in which any person may be working for or otherwise interested in a share or part of the crop," etc. Laws 1873, p. 79.

In delivering the opinion of the court in above case Chalmers, J., said: "Manifestly the services here described are not embraced and protected by the statutes under which the proceeding was instituted. These statutes are only intended to grant liens upon the crops, and to provide means

for the enforcement thereof, for those classes enumerated therein, to wit, the employer and employe, the landlord and tenant, the cropper on shares," etc.    The statutes did not, as the learned judge stated, embrace by enumeration employes, and though the decision was correct upon the statutes as they really existed, it is by no means clear that the same conclusion would have been reached if the lien provided for by them had also been given to any employe engaged in making the crop    It is to be noted that § 1360, code of 1880, confers the lien upon "every employe, laborer, cropper, part owner or other person who may aid by his labor to make, gather or prepare for market or sale any crop," thus extending the liens provided for by the acts of 1872 and 1873, by the most comprehensive language, to persons to whom the former laws did not apply.    If the legislative purpose was to give the lien only to laborers, croppers on shares and others who bestowed manual labor directly to the cultivation, gathering and preparing crops for market or sale, the material and obvious changes made in the code would have been unnecessary. The inference is that the altered language was chosen for the purpose of conferring the lien upon persons occupying different relations to the crops than those sustained by others to whom former statutes applied, and it is difficult to conceive of a class which would more naturally or justly fall within the scope of the added language than that to which the appellee belongs.

*The judgment is affirmed.*